IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| WILLIAM LUND,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF ROCKFORD, a municipal corporation, Rockford Police Officers SEAN WELSH #3865, TIMOTHY CAMPBELL #3852, and EDDIE TORRANCE #0211, in his individual and supervisory capacities,<br><br>    Defendants. | Case No. 17-cv-50035<br><br>Judge: Frederick J. Kapala<br><br>Magistrate Judge: Iain D. Johnston |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS WELSH, CAMPBELL AND TORRANCE'S MOTION FOR SUMMARY JUDGMENT

NOW COME Defendants SEAN WELSH, TIMOTHY CAMPBELL, and EDDIE TORRANCE, by their attorney, Michael F. Iasparro of Hinshaw & Culbertson LLP, and for their Memorandum of Law in Support of Motion for Summary Judgment, state as follows:

**I.    Summary Judgment Standard.**

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

**II.    The officers had probable cause to arrest Plaintiff for obstruction of justice, as well as numerous traffic offenses.**

    *A.    Probable cause is a common sense judgment.*

Count I of the Complaint alleges false arrest and unlawful detention against Defendants Welsh and Campbell. In Count I, Plaintiff alleges that Defendants Welsh and Campbell "in

falsely seizing, searching, detaining, and arresting Plaintiff without a warrant or probable cause violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and hence violated 42 U.S.C. § 1983."  ¶36 of Complaint.

The existence of probable cause is an absolute defense to a § 1983 claim for false arrest. *Gibbs v. Lomas*, 755 F.3d 529, 537 (7th Cir. 2014).  "An officer has probable cause to make an arrest only when the facts and circumstances within his knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed an offense." *Id.* "Probable cause is a fluid concept that relies on the common-sense judgment of the officers based on the totality of the circumstances." *Jones v. City of Elkhart, Ind.*, 737 F.3d 1107, 1114 (7th Cir. 2013).  Probable cause is far short of certainty – it requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.  *United States v. Carroll*, 750 F.3d 700, 706 (7th Cir. 2014).  The existence of probable cause depends on "the elements of the predicate criminal offense(s) as defined by state law." *Abbott v. Sangamon Cnty., Ill.*, 705 F.3d 706, 715 (7th Cir. 2013).

> B. *Plaintiff obstructed justice by impeding or hindering the officers in the performance of their authorized duties, in particular their conducting an undercover prostitution sting operation.*

> 1. Obstruction under Illinois law.

Under Illinois law, "[a] person who knowingly resists or obstructs the performance by one known to the person to be a peace officer … of any authorized act within his or her official capacity commits a Class A misdemeanor."  720 ILCS 5/31-1(a).  Illinois courts used to require "some physical act which imposes an obstacle which may impede, hinder, interrupt, prevent or delay the performance of the officer's duties, such as going limp, forcefully resisting arrest or physically aiding a third party to avoid arrest." *People v. Raby*, 40 Ill.2d 392, 240 N.E.2d 595,

599 (Ill. 1968). The Illinois Supreme Court clarified the meaning of "obstruct" in this context of the statute in 2012 in the case *People v. Baskerville*, 2012 IL 111056, 963 N.E.2d 898, 902-906 (Ill. 2012). While acknowledging that most cases specifically addressing obstructing a peace officer involved a physical act, the *Baskerville* court stated:

> Although a person may commit obstruction of a peace officer by means of a physical act, this type of conduct is neither an essential element of nor the exclusive means of committing an obstruction. The legislative focus [of the statute] is on the tendency of the conduct to interpose an obstacle that impedes or hinders the officer in the performance of his authorized duties.

963 N.E.2d at 905. For example, even refusing a police officer's lawful order to move can amount to interference with the officer's discharge of his or her duty. *People v. Shenault*, 2014 IL App (2d) 130211, ¶17, 25 N.E.3d 703. *See also People v. Synnott*, 349 Ill.App.3d 223, 227, 811 N.E.2d 236 (2004) (inaction, such as refusing a police officer's lawful order to move out of the way, can constitute interference with the officer in the discharge of his or her duties).

In *Julian v. Paz*, a § 1983 false arrest action, the Plaintiff was arrested for obstructing a police investigation after he refused to leave the area despite multiple orders to do so, and persistent questioning of the officers and demanding of information, which prevented the officers from doing their jobs. 2017 U.S. Dist. LEXIS 29998 *4-5 (U.S. Dist. Ct. NDIL, March 3, 2017). The District Court, in considering the Plaintiff's motion for partial summary judgment, stated, "Although simply asking a police officer questions does not provide probable cause for arrest, Defendants' version of the facts indicates that in addition to relentlessly peppering Defendant Paz with questions and yelling, Plaintiff also physically stood in his way." *Id.* at *8 (citing *People v. Martinez*, 307 Ill.App.3d 368, 717 N.E.2d 535, 539 (Ill. App. Ct. 1999) (officer had probable cause to arrest defendant for obstructing a peace officer where defendant stood in between officers and people they were trying to question and did not obey officer's instructions to stay

3

away, since defendant's actions impeded the officer's performance of his duties by making it so that he could not concentrate on questioning); *City of Chicago v. Meyer*, 44 Ill.2d 1, 253 N.E.2d 400, 402 (Ill. 1969) (defendant obstructed peace officer by refusing to obey order to disperse and attempting to continue disorderly conduct); *People v. Woidtke*, 224 Ill.App.3d 791, 587 N.E.2d 1101, 1110 (Ill. App. Ct. 1992) (defendant's intrusion into area of police investigation, his failure to stop when approached, and his supplying false information to the police and failure to identify himself provided probable cause for his arrest for obstructing a peace officer); *People v. Herrera*, 2016 IL App (2d) 141038-U, 2016 WL 156043, at *15 (Ill. App. Ct. Jan. 12, 2016) ("[A] rational trier of fact could reasonably conclude that defendant's refusal to put his dogs away [despite multiple orders by the officers] interfered with the officers' discharge of their duty because it impeded or hindered them in investigating the crime, as the dogs could be seen as anything from a significant distraction … to a potential threat to the officer's safety."))

        2.      The facts supported Plaintiff's arrest for obstruction.

Here, on the evening of May 25, 2015, members of the Rockford Police Department's M3 Street Crimes Team were conducting an undercover prostitution detail in the City's Midtown District, an area known for high levels of prostitution activity. SOF ¶9.[1] That evening, female officers posed in an undercover capacity as prostitutes, and Officers Welsh and Campbell were in an unmarked "stop car" as part of the detail. SOF ¶¶ 9-11. Officers Welsh and Campbell received information from one of the female undercover officers that she was concerned, "kind of weirded out," and "not comfortable" with a man who turned out to be Plaintiff taking pictures of her and the other undercover officers. SOF ¶13.

---

[1] Citations to the Defendant Officers' Rule 56.1 Statement of Material Facts in Support of Motion for Summary Judgment are cited herein as SOF ¶ ___.

4

With this information, Officers Welsh and Campbell approached Plaintiff, who was straddling or standing next to his motorized bicycle at the time, and told Plaintiff they were conducting a detail and that he needed to leave the area. SOF ¶14. They did so in order to protect the integrity of the detail and the safety of the undercover officers. SOF ¶15. Plaintiff was also told that if he did not leave that his continued presence would constitute obstruction of justice, and he would be arrested. SOF ¶16. Plaintiff then began to leave the area on his motorized bicycle in the direction of the undercover officers and, as he did so, he very demonstratively waved at the undercover officers and yelled in a very loud voice, "Goodbye, Officers." SOF ¶18. At that point, Officers Welsh and Campbell decided to arrest Plaintiff, believing he was attempting to compromise the undercover prostitution detail and that his act of waving and yelling "Goodbye, Officers" in the direction of the undercover officers was a deliberate act aimed at alerting other people in the area to what the officers were doing and to the undercover officers' identity. SOF ¶¶20-21. As Officers Welsh and Campbell pursued Plaintiff to arrest him, Plaintiff, whose driver's license was revoked at the time, rode his motorized bicycle the wrong way on a one-way street at an approximate rate of speed of 24 miles per hour. SOF ¶¶22-23. Plaintiff was arrested and charged with obstruction of justice, driving a motor vehicle while having a revoked driver's license, driving a motor vehicle the wrong way on a one-way street, and operating an uninsured motor vehicle. SOF ¶25.

Similar to the defendants in the cases cited in section II(A)(1) above, Plaintiff's intentional act of demonstratively waving at the undercover police officers, whom he knew to be involved in an undercover police operation, and yelling loudly in their direction, "Goodbye, Officers" so as to alert anyone in the vicinity that they were police officers and as to the existence of the detail, impeded and interfered with the police investigation. At a minimum, it

5

impeded Officer Welsh and Campbell from their "stop car" duties, because they were forced to turn their attention to Plaintiff in order to protect the integrity of the operation and the safety of the undercover officers. Officers Welsh and Campbell reasonably concluded that Plaintiff's actions "interpose[d] an obstacle that impede[d] or hindere[d]" the ongoing investigation, and thus that he had committed the offense of obstruction of justice under Illinois law. *See Baskerville*, 963 N.E.2d at 906.

> B. *In addition to obstruction of justice, the officers had probable cause to believe Plaintiff was operating a motorized bicycle in violation of Illinois law, and therefore a valid driver's license and vehicle insurance were required.*

Subsequent to witnessing Plaintiff wave at the undercover female officers and loudly yell "Goodbye officers" in their direction, Officers Welsh and Campbell began pursuing Plaintiff westbound on Broadway Street in Rockford. SOF ¶22. Plaintiff, whose driver's license was revoked as of May 25, 2015, drove away on his motorized bicycle and turned southbound on Ninth Street, a one-way street for northbound traffic. SOF ¶22. Officers Welsh and Campbell caught up to Plaintiff and paced him going approximately 24 miles per hour. SOF ¶23. Under Illinois law, the offense of driving while license revoked requires the State to prove, *inter alia*, that a defendant was operating a motor vehicle. 625 ILCS 5/6-303(a). The Illinois Vehicle Code defines motor vehicle as "[e]very vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, except for vehicles moved solely by human power, motorized wheelchairs, low-speed electric bicycles, and low-speed gas bicycles." 625 ILCS 5/1-146. Low-speed gas bicycles are themselves defined as "[a] 2 or 3-wheeled device with fully operable pedals and a gasoline motor of less than one horsepower, whose maximum speed on a paved level surface, when powered solely by such a motor while ridden by an operator who weighs 170 pounds, is less than 20 miles

6

per hour." 625 ILCS 5/1-140.15. Officer Welsh, based on pacing Plaintiff going 24 miles per hour, believed that Plaintiff's bicycle, which had a motor attached to it, could be classified as a motor vehicle under Illinois law. SOF ¶23.

In this case, the evidence is uncontroverted as to what Officers Welsh and Campbell observed with respect to Plaintiff, both in terms of his conduct toward the undercover officers and with respect to his operation of the motorized bicycle he was riding – the wrong way on a one-way street and paced at 24 miles per hour. The Seventh Circuit has made clear that a court evaluating probable cause does so not as an omniscient observer, but on facts as they would have appeared to a reasonable person in the position of the arresting officer, seeing what he saw, hearing what he heard. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir. 1988). If a reasonable officer in the same or similar circumstances would have believed that a particular party committed a crime, the arrest is lawful even if the officer's belief was mistaken. *Id.* "[A]n officer's belief does not have to be correct or even more likely true from false so long as it is reasonable." *Reynolds v. Jamison*, 488 F.3d 756, 765 (7th Cir. 2007).[2]

The arresting officers here knew there was a motor on Plaintiff's bicycle, and they paced him going 24 miles per hour, above the threshold for low-speed gas bicycles under Illinois law. *See* 625 ILCS 5/1-140.15. In addition, Plaintiff rode his motorized bicycle the wrong way on a one-way street, also a violation of Illinois law justifying the stop. *See* 625 ILCS 5/11.708. Even putting aside Plaintiff's obstructive conduct with respect to the undercover operation a few moments before, the officers had probable cause to stop Plaintiff for those two traffic violations. Upon doing so, they learned Plaintiff's driver's license was revoked, which is also uncontested,

---

[2] In citing this precedent, the Defendant Officers in no way concede that Officers Welsh or Campbell's beliefs regarding probable cause were mistaken, but rather to point out that the law gives them the benefit of the doubt so long as their beliefs were reasonable.

7

and so Plaintiff was also arrested for and charged with operating a motor vehicle while having a revoked driver's license, in violation of 625 ILCS 5/6-303(a), a class A misdemeanor under Illinois law. SOF ¶¶30, 41.

It was reasonable for the arresting officers to believe that the bicycle Plaintiff was operating was a motor vehicle. It had a motor attached, Officer Welsh believed Plaintiff weighed approximately 170 pounds, Plaintiff was operating it on a level surface, and Officer Welsh paced Plaintiff going 24 miles per hour. SOF ¶¶22-23, 25. In fact, Plaintiff himself admits the motor was 80cc in size, capable of going up to 30 miles per hour. SOF ¶44. Regardless of whether Plaintiff had modified that motor to go less than 20 miles per hour – a fact, even assuming it to be true, that the arresting officers could not have known at the time of the stop – the size of the motor supports the reasonableness of the officers' beliefs and actions. *See People v. Plank*, 2018 IL 122202, 106 N.E.2d 995, 1003 (2018) (rejecting a vagueness challenge to the Illinois Vehicle Code's definition of "low-speed gas bicycle" at 625 ILCS 5/1-140.15, and stating, "[I]f an officer sees someone driving a motorized bicycle at a speed well over 20 miles per hour down a level road, those facts support the officer's initial conclusions that this vehicle's motor is powerful enough to move someone who weighs 170 pounds over a paved, level surface at a speed over 20 miles per hour and that the driver needs a valid license to operate this vehicle.")

        C.    *Regardless, qualified immunity provides a complete defense to the Defendant officers.*

"[A] defendant is entitled to qualified immunity in a false arrest case when, if there is no probable cause, a reasonable officer could have mistakenly believed that probable cause existed." *Fleming v. Livingston Cnty., Ill.*, 674 F.3d 874, 880 (7th Cir. 2012); *see also Williams v. City of Chi.*, 733 F.3d 749, 758 (7th Cir. 2013) (explaining that the concept of "arguable probable cause"

8

provides "qualified immunity to officers who reasonably but mistakenly believed they had probable cause to arrest" (quotation marks omitted)). Thus, even if there was no probable cause to arrest Plaintiff, which the Defendant officers do not concede, the officers had at least arguable probable cause based on the facts and circumstances known to them at the time of the arrest, as already set forth above. "Qualified immunity protects police officers who reasonably interpret an unclear statute." *Mastafa v. City of Chicago*, 442 F.2d 544, 549 (7th Cir. 2006).

It is anticipated that Plaintiff will point to cases which hold that filming or videotaping of government officials engaged in their duties in a public place, including police officers performing their responsibilities, is protected by the First Amendment. *See, e.g., Glik v. Cunniffe*, 655 F.3d 78, 82 (1st Cir. 2011). In *Glik*, the Plaintiff was arrested for using his cell phone's digital video camera to film several police officers arresting a young man on Boston Common. *Id.* at 79. The First Circuit held that Plaintiff was exercising a clearly-established First Amendment right in filming the officers in a public space, and his clearly-established Fourth Amendment rights were violated without probable cause. *Id.* The *Glik* court said, "Such peaceful recording of an arrest in a public space <u>that does not interfere with the police officers' performance of their duties</u> is not reasonably subject to limitation." *Id.* at 84 (emphasis added).

Here, by contrast, Plaintiff was not arrested for merely taking photographs or video of any officer engaged in their duties in a public space. There is no evidence of that, despite Plaintiff's allegations to that effect. Rather, Plaintiff was arrested for obstruction of justice after loudly yelling "Goodbye, Officers" and waving at undercover officers, in what the arresting officers believed was an attempt to alert others in the area to the fact of the undercover operation and the identity of the undercover officers – facts not present in *Glik*. *See also Colten v. Kentucky*, 407 U.S. 104 (1972) (in determining whether an activity is protected by the First

9

Amendment, distinguishing between an activity that obstructs an investigation or endangers the officer and one that involves peacefully observing and criticizing a police officer from a safe distance); *Montgomery v. Killingsworth*, 2015 WL 289934, *7 (E.D. Penn., Jan. 22, 2015) ("Another unprotected, or at least less protected, category of expression is speech that obstructs a police officer's investigation or jeopardizes a police officer's safety.")

### III. Because the officers had probable cause to arrest Plaintiff, there was no unreasonable or illegal seizure or search of his person incident to that arrest.

Count II of the Complaint alleges Unreasonable/Illegal Search & Seizure under a § 1983 theory, based on Defendants Welsh and Campbell's alleged "seizing of Plaintiff for taking photographs, and seizing and/or destroying Plaintiff's cellular phone." ¶39 of Complaint. The analysis with respect to the seizure of the Plaintiff is the same as that for his arrest – was there probable cause to arrest him? With respect to the seizure of Plaintiff's cell phone (there is no evidence in the record that his cell phone was destroyed), police officers are permitted to conduct searches of persons incident to arrest, and to seize any contraband or evidence of criminal activity pursuant thereto. *People v. Davis*, 34 Ill.2d 38 (1966); *Chimel v. California*, 395 U.S. 752, 763 (1969). The cell phone, by Plaintiff's own admission, contained photographs and videos he had taken of the undercover female officers posing as prostitutes, probative of and relevant to the obstruction of justice charge against him, based in large part on his interference with the lawful police activity. SOF ¶29.

### IV. Plaintiff's failure to intervene theory fails because there was no underlying constitutional violation.

Count III alleges Failure to Intervene against Defendants Welsh and Campbell under a § 1983 theory for "failing to intervene to protect Plaintiff from false arrest and unreasonable search and seizure, despite the duty and reasonable opportunity to do so." ¶42 of Complaint. An officer

10

301189346v1 0996346

who is present and fails to intervene to prevent another officer from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used; or (2) that a citizen has been unjustifiably arrested; or (3) that any constitutional violation has been committed by a law enforcement official, <u>and</u> the officer had a realistic opportunity to intervene to protect the harm from occurring. *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). In order for there to be any liability under a failure to intervene theory, there must exist an underlying constitutional violation – a party cannot succeed on a failure to intervene theory against one defendant where he fails to establish that the other defendant or defendants committed a constitutional violation, e.g., used excessive force against him. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). Because Plaintiff has failed to establish any underlying constitutional violation – for the reasons set forth above – his failure to intervene theory fails as a matter of law.

> **V. Detective Torrance cannot be liable under a supervisory liability theory because he did no more than supervise Officers Welsh and Campbell, and he did not personally participate in any conduct targeted at Plaintiff or otherwise acquiesce in its commission.**

Count IV alleges "Supervisory Liability" against Defendant Torrance, also under a § 1983 theory. A defendant cannot be held liable under § 1983 if he or she merely exercised supervisory authority over those who violated a plaintiff's rights – even assuming that to be the case – and did not personally participate in the conduct or otherwise acquiesce in its commission. *Kelly v. Municipal Courts*, 97 F.3d 902, 909 (7th Cir. 1996); *Thompson v. Boggs*, 33 F.3d 847, 857 (7th Cir. 1994); *Mortin v. City of East Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003) (chief cannot be liable for any constitutional violations committed by officers simply by virtue of his supervisory role). Here, Detective Torrance testified the arrest of Plaintiff was made by Officers Welsh and Campbell, and he did not even go to the location of the arrest or have any contact

11

with Plaintiff whatsoever that evening. SOF ¶26. There is no "supervisory liability" in this case for the operation's supervisor, Sergeant Torrance, because he merely supervised Officers Welsh and Campbell, and did not personally participate in Plaintiff's arrest.

> VI. **Regardless of whether Plaintiff was actually engaged in protected First Amendment activities the evening of May 25, 2015, which is suspect, there is no evidence that said conduct was a substantial factor or motivating factor in his arrest.**

Count V alleges First Amendment Retaliation, presumably against all three Defendant officers, also under a § 1983 theory. The elements of such a claim are that 1) the Plaintiff's conduct was constitutionally protected; and 2) the Plaintiff's conduct was a substantial factor or motivating factor in the Defendants' challenged actions. *Abrams v. Walker*, 307 F.3d 650, 654 (7th Cir. 2002). Though it is unclear, the constitutionally protected conduct that Plaintiff seems to allege he was engaged in the evening of his arrest was operating as a freelance "journalist" for an entity known as Rockford Scanner, which operates a website and posts information, photographs and videos online of community activity in the Rockford, Illinois area, including crime activity. By Plaintiff's own concession, he has no journalism credentials and has never worked for a traditional media outlet. SOF ¶27. Moreover, there is no evidence in the record that any of the Defendant officers knew Plaintiff was supposedly engaged in press or media activity that evening. SOF ¶17. Nor is there any evidence that Plaintiff was told by any police officer that evening that he was being arrested for photographing or documenting police activity. SOF ¶¶37-38. Protected conduct, even assuming its presence, cannot be proven to motivate retaliation if there is no evidence that the defendants knew of the protected activity. *Stagman v. Ryan*, 176 F.3d 986, 1000-01 (7th Cir. 1999). Such is the case here, and so Plaintiff's First Amendment retaliation claim fails.

301189346v1 0996346

**VII.   There is no evidence the Defendant officers conspired to do anything the evening of May 25, 2015.**

Count VI alleges Conspiracy under a § 1983 theory against all three Defendant officers. In order to establish a prima facie case of civil conspiracy, a plaintiff must show 1) an agreement or meeting of the minds between two or more of the defendants to violate the plaintiff's civil rights, and 2) an overt act in furtherance of the conspiracy which results in a violation of a federal constitutional right. *Wagner v. Washington County*, 493 F.3d 833, 836 (7th Cir. 2007). Here, there is no evidence in the record of any agreement among the Defendant officers to deprive Plaintiff of his constitutional rights. The evidence in the record is that Plaintiff was arrested for obstruction of justice because the officers believed he obstructed justice. Because, as detailed above, there was probable cause for the officers to have so believed, there was no deprivation of any of Plaintiff's rights, and thus no overt acts in furtherance of any agreement to violate them. Plaintiff's conspiracy claim fails as a matter of law.

**VIII.  Malicious prosecution is not a cognizable cause of action under § 1983 and, regardless, there was probable cause for Plaintiff's arrest, there is no evidence of malice, and the criminal proceedings against the Plaintiff were not terminated on the merits.**

Counts VII and VIII both allege Malicious Prosecution, Count VII under a § 1983 theory and Count VIII under Illinois law and an espoused respondeat superior theory. First, with respect to the malicious prosecution claim in Count VII pursuant to § 1983, such a claim is not cognizable as a § 1983 claim, which Plaintiff seems to concede at footnote 1 of his Complaint where he states, "Plaintiff recognizes that the Seventh Circuit Court of Appeals has held that there is no cause of action in Illinois for malicious prosecution under 42 U.S.C. § 1983." *See also Newsome v. McCabe*, 256 F.3d 747, 750-53 (7th Cir. 2001). With respect to a state law malicious prosecution claim, under Illinois law a plaintiff needs to prove five elements: 1) the

13

plaintiff was subjected to judicial proceedings; 2) probable cause did not exist for those proceedings; 3) the defendants instituted or continued the proceedings maliciously; 4) the proceedings were terminated on the merits in favor of plaintiff in a manner indicative of plaintiff's innocence; and 5) an injury was proximately caused by the proceedings. *Washington v. Summerville*, 127 F.3d 552, 557 (7th Cir. 1997).

Here, the charges stemming from Plaintiff's arrest the evening of May 25, 2015 were all dismissed on motion of the State on February 12, 2016. SOF ¶36. No reason was given for the dismissal, nor is there any such reason in the record of this case. SOF ¶36. Plaintiff has the burden of proving a favorable termination. *Swick v. Liautand*, 169 Ill.2d 504, 662 N.E.2d 1238, 1243 (Ill. 1996). A plaintiff meets his burden only when he establishes that the *nolle prosequi* was entered for reasons consistent with his innocence. *Id.* The circumstances surrounding the cessation of the criminal proceedings must compel an inference that reasonable grounds to pursue the criminal prosecution were lacking. *Id.* "The bare use of the *nolle prosequi* order, which did not state its reasons for its entry, did not establish that the criminal proceedings were terminated in a manner consistent with [Plaintiff's] innocence." *Id.* Here, Plaintiff has not – and cannot – meet his burden, and so his state law malicious prosecution claim also fails as a matter of law.

### IX. Indemnification is inapplicable where there is no liability.

Lastly, Count IX alleges Indemnification against the City of Rockford, which is not really an independent cause of action at all, but a request for relief from the City of Rockford, as the individual Defendant officers' employer, for indemnification pursuant to Illinois law should they be found liable on any of the other claims. Because none of the individual Defendant officers are liable on any claim, the indemnification issue is a moot point.

301189346v1 0996346

## X. Conclusion

For all of the reasons set forth above, the Defendant Officers request that this Court grant their Motion for Summary Judgment, enter judgment in their favor as to all counts of the Complaint, and for such other and further relief as the Court deems appropriate.

Respectfully submitted,

HINSHAW & CULBERTSON LLP


/s/ Michael F. Iasparro
Michael F. Iasparro

Michael F. Iasparro
Hinshaw & Culbertson LLP
100 Park Avenue – P.O. Box 1389
Rockford, IL 61105-1389
Telephone: 815-490-4900
Facsimile: 815-490-4901
miasparro@hinshawlaw.com

301189346v1 0996346