IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| WILLIAM LUND, | ) |
| Plaintiff, | ) Case No. 17-cv-50035 |
| | ) Judge: Frederick J. Kapala |
| v. | ) |
| | ) Magistrate Judge: Iain D. Johnston |
| CITY OF ROCKFORD, a municipal corporation, Rockford Police Officers SEAN WELSH #3865, TIMOTHY CAMPBELL #3852, and EDDIE TORRANCE #0211, in his individual and supervisory capacities, | ) |
| Defendants. | ) |

## PLAINTIFF'S RESPONSE TO DEFENDANT WELSH, CAMPBELL AND TORRANCE'S RULE 56.1(A)(1)(3) STATEMENT OF MATERIAL FACTS

### PARTIES

1. Plaintiff William Lund is, and was at all times relevant to the Complaint, a resident of the City of Rockford. Complaint at ¶5 (Dkt. 1).

   **RESPONSE: Admitted.**

2. The City of Rockford, Illinois ("City") is a municipal corporation in the State of Illinois. Defendant Welsh, Campbell and Torrance's Answers to Complaint at ¶6 (Dkt. 8, 9 and 10).

   **RESPONSE: Admitted.**

3. Defendant Officer Sean Welsh has been a police officer employed by the City's Police Department since August 29, 2005. Exh. A (Welsh Dep., 13:12-13). In May of 2015, Officer Welsh was assigned to the Rockford Police Department's M3 Street Crimes Team, a unit which generally did not handle calls for service but proactively sought out criminal activity in the City. Exh. A (Welsh Dep., 52:7-11, 52:22-53:4).

   **RESPONSE: Admitted.**

4. Defendant Officer Timothy Campbell has been a police officer employed by the Department since August 2005. Exh. B (Campbell Dep., 16:20-24). On May 25, 2015, Officer Campbell was assigned to the Department's M3 Street Crimes Team. Exh. B (Campbell Dep., 27:20-28:1).

**RESPONSE: Admitted.**

5. Defendant Officer Eddie Torrance has been a police officer employed by the Department since October 3, 1994. Exh. C (Torrance Dep., 10:9-11). On May 25, 2015, Officer Torrance held the rank of sergeant and was the supervisor of the Department's M3 Street Crimes Team. Exh. C (Torrance Dep., 20:21-21:15).

**RESPONSE: Admitted.**

## JURISDICTION

6. This Court has original jurisdiction over Counts I, II, III, IV, V, VI and VII of the Complaint, all of which allege violations of Plaintiff's rights under the United States Constitution by persons acting under color of authority by statute, ordinance, regulation, custom and/or usage. 42 U.S.C. § 1983; 28 U.S.C. § 1331.

**RESPONSE: Admitted.**

7. This Court has supplemental jurisdiction over Counts VIII and IX of the Complaint, pursuant to 28 U.S.C. § 1367(a), as those claims are so related to the claims in Counts I-VII within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**RESPONSE: Admitted.**

8. Venue is proper in the United States District Court for the Northern District of Illinois, Western Division, pursuant to 28 U.S.C. § 1391(b)(1) and (2), as all defendants reside in the judicial district, and the alleged events or omissions giving rise to the claims occurred in the judicial district.

**RESPONSE: Admitted.**

## MATERIAL FACTS SUPPORTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT OFFICERS

9. On May 25, 2015, the Department's M3 Street Crimes Team conducted a prostitution detail in the City's Midtown District, which is on the near east side of Rockford, an area known for high levels of prostitution activity. Exh. A (Welsh Dep., 63:5-11, 69:8-21). When working such details, female police officers pose as prostitutes in an undercover capacity, while other members of the team provide surveillance and security for the undercover officers from an unmarked vehicle in close proximity to the undercover officers. Other team members remain hidden away in unmarked police cars, awaiting information from the surveillance officer that a potential "john" has made a deal with an undercover officer and should be stopped and arrested. This protocol was being followed during the prostitution detail being conducted by the M3 Street Crimes Team on May 25, 2015. Exh. A (Welsh Dep., 63:5-65:15).

**RESPONSE: Admitted.**

10. The undercover officers posing as prostitutes on the detail were not armed. Exh. A (Welsh Dep., 65:16-18).

**RESPONSE: Admitted.**

11. On May 25, 2015, Officers Welsh and Campbell were in a black unmarked stop car as part of the prostitution detail. Exh. A (Welsh Dep., 67:5-13).

**RESPONSE: Admitted.**

12. When Officers Welsh and Campbell first observed Plaintiff on May 25, 2015, Plaintiff was straddling his bike, or standing near his bicycle, on Broadway in an alley across the street from Arbor Court. Exh. A (Welsh Dep., 70:13-17).

**RESPONSE: Admitted.**

13. Prior to Officers Welsh and Campbell observing Plaintiff that evening, Officer Kubik, one of the female officers posing in an undercover capacity as a prostitute, had contacted Officers Welsh and Campbell and expressed concern that there was a man riding around on a motorized bicycle taking pictures of her and the other undercover officer. Officer Kubik was "kind of weirded out by it." She was "not comfortable with him [Plaintiff] taking pictures." Exh. A (Welsh Dep., 71:15-72:1; 72:11-13).

**RESPONSE: It is not disputed that Plaintiff took pictures of whom he believed were "real" prostitutes at the time. However, one of the "prostitutes" approached Plaintiff and that is when he took a photograph as he is tired of them harassing him as he lives in the area. (See Exhibit 1, Deposition of Plaintiff, pps 30-31).**

14. Upon receiving this information, Officers Welsh and Campbell approached Plaintiff. Officer Campbell asked Plaintiff to leave the area and stop taking pictures, because they were concerned Plaintiff was interfering with the police detail and investigation. At that point, Plaintiff was approximately half a block away from the undercover operation. Exh. A (Welsh Dep., 74:1-75:5; 76:1-4).

**RESPONSE: It is disputed that that Defendants Welsh and Campbell told Plaintiff to stop taking pictures. (See Exhibit 2, video of encounter with Plaintiff and Defendants Welsh and Campbell: Ex. 1, Deposition of Plaintiff, p. 33, lines 1-4). It is not disputed that Defendants Welsh and Campbell told Plaintiff to "get out of sight". Plaintiff disputes that he was "half a block away" from the operation as he was a full block away from the operation when Defendants Welsh and Campbell approached him. (See Exhibit 2, video of encounter with Plaintiff and Defendants Welsh and Campbell).**

15. Plaintiff questioned Officers Welsh and Campbell as to why he had to leave, whether he was breaking the law, and how far away he needed to be. Officer Campbell explained to Plaintiff they were conducting a detail and he wanted Plaintiff to leave. Officer Campbell did so in order to protect the integrity of the detail and the safety of the undercover officers. Exh. A (Welsh Dep., 76:19-77:6); Exh. B (Campbell Dep., 35:1-11; 36:3-16).

**RESPONSE: It is not disputed that Plaintiff asked if he was breaking any law and how far he needed to be away. Responding further, Plaintiff agreed to leave after he was instructed to do so. (See Exhibit 1, Deposition of Plaintiff p. 34, lines 13-23).**

16. Officer Campbell told Plaintiff that he was not breaking any laws at that time, but that if he did not leave he would be arrested because his continued presence was going to constitute obstruction. Exh. B (Campbell Dep., 36:3-16).

**RESPONSE: Admitted that is what Defendant Campbell told Plaintiff. However, it is disputed that Plaintiff's presence a block away from an undercover detail on a public street constitutes obstruction.**

5

17. Plaintiff never identified himself as a reporter or member of the press to Officers Welsh and Campbell. Exh. A (Welsh Dep., 77:13-18).

**RESPONSE: Admitted that Plaintiff did not identify himself as a reporter or a member of the Press. Responding further, Defendant Welsh recognized that Plaintiff was William Lund when they approached him, and Defendant Welsh knew that Plaintiff worked for the Rockford Scanner. (See Exhibit 3, Deposition of Defendant Welsh, p. 72, line 23- p. 74, line 9).**

18. Upon being told to leave the area, Plaintiff began to leave on his motorized bicycle in the direction of the undercover officers. As he passed the undercover officers, Plaintiff, very demonstratively, waved at the undercover officers and yelled out in a very loud voice, "Goodbye, Officers." Exh. A (Welsh Dep., 77:21-78:3); Exh. B (Campbell Dep., 39:4-40:10; 40:24-41:5).

**RESPONSE: Disputed, Plaintiff said "good-bye" officers to Defendants Welsh and Campbell as he rode his bike away. (See. Exhibit 1, Deposition of Plaintiff, p. 35, lines 3-18).**

19. Officers Welsh and Campbell, who were approximately one-half block away when Plaintiff yelled at the undercover officers, heard Plaintiff over the noise of Plaintiff's motorized bicycle, and observed that Plaintiff's statement was directed at the two undercover officers working on the street corner at the time. Exh. A (Welsh Dep., 77:21-78:8; 78:17-20).

**RESPONSE: Disputed, Plaintiff said "good-bye" officers to Defendants Welsh and Campbell as he rode his bike away. (See. Exhibit 1, Deposition of Plaintiff, p. 35, lines 3-18).**

20. At that point, Officers Welsh and Campbell made the decision to arrest Plaintiff, based on their concern for the safety of the undercover officers, due to Plaintiff's taking pictures of the undercover officers in the area where they were conducting the prostitution detail and then in a very loud voice identifying them as police officers. Exh. A (Welsh Dep., 80:20-82:2).

**RESPONSE: Disputed, Plaintiff said "good-bye" officers to Defendants Welsh and Campbell as he rode his bike away. (See. Exhibit 1, Deposition of Plaintiff, p. 35, lines 3-18).**

21. Officers Welsh and Campbell believed Plaintiff was attempting to compromise the undercover prostitution detail, and that Plaintiff's act of waving at the undercover officers and yelling, "Goodbye, Officers" in their direction was an intentional act aimed at alerting other people in the area to what the undercover officers were doing. Exh. A (Welsh Dep., 83:13-24); Exh. B (Campbell Dep., 41:6-14; 65:9-22).

**RESONSE: Disputed. Plaintiff said "good-bye" to these officers and did not intend to alert people in the area to an undercover operation. (See Exhibit 1, Deposition of Plaintiff, p. 36, lines 1-11).**

22. Officers Welsh and Campbell then began pursuing Plaintiff, who was heading west on Broadway. They caught up to Plaintiff at Broadway and 9th Street, where Plaintiff turned left, or southbound, on 9th Street, which is a one-way street heading north – meaning Plaintiff was operating his motorized bicycle going the wrong way on a one-way street. Exh. A (Welsh Dep., 85:10-87:7); Exh. B (Campbell Dep., 44:2-45:22).

**RESPONSE: It is not disputed that Defendant Welsh and Campbell pursued Plaintiff. It is also not disputed that Plaintiff turned left onto 9th Street. It is disputed that**

**Plaintiff's bicycle is a "motor vehicle" under 625 ILCS 5/60303(a) as it is a "low-speed gas bicycle". (See Exhibit 1, Deposition of Plaintiff, pps. 25-26).**

23. Officers Welsh and Campbell turned in behind Plaintiff on 9th Street and paced him along a flat area of the street going approximately 24 mph. Officer Welsh, who was driving, did so by looking at his vehicle's speedometer and traveling the same speed that Plaintiff was traveling. Officer Welsh believed that the bicycle Plaintiff was riding, which had a motor attached to it, could be classified as a motor vehicle under Illinois law. Exh. A (Welsh Dep., 87:23-89:6; 89:24-90:9). Officer Welsh also believed Plaintiff weighed around 170 pounds that evening, which Plaintiff confirmed. Exh. A (Welsh Dep., 138:17-24); Exh. E (Lund Dep., 21:20-22:1).

**RESPONSE: Disputed. Plaintiff's bicycle could only go 19 to 20 miles an hour. (See Exhibit 1, Deposition of Plaintiff, p. 24, lines 14-18; p. 99, lines 3-18).**

24. Officers Welsh and Campbell stopped Plaintiff shortly thereafter and arrested him for obstructing a police investigation, based upon his actions which interfered with the undercover police operation that the M3 Street Crimes Team was conducting. Exh. A (Welsh Dep., 90:24-92:1).

**RESPONSE: It is admitted that Defendants Welsh and Campbell stopped and arrested Plaintiff for obstruction. It is disputed that Plaintiff obstructed the police investigation as he complied with the officers and left when they asked him to leave. (See Exhibit 1, Deposition of Plaintiff, p. 34, lines 7-17).**

25. On the evening of Plaintiff's arrest, Officer Campbell filled out a Probable Cause Statement summarizing the bases for Plaintiff's arrest. Exh. D (Probable Cause Statement, Exh. 1 to Campbell Dep.); Exh. B (Campbell Dep., 49:1-9; 51:9-53:12). That Probable Cause statement, setting forth the facts that established probable cause for Plaintiff's arrest, reads as follows:

On Sunday, 5/25/15 at 2330 hours, officers from the M3 street team were conducting a prostitution detail in the mid town district. Undercover officers were at the intersection of Parmele St and Broadway. During our detail William Lund arrived on his bike and began to video record and photograph the undercover officers from less than a block away. Due to William circling the area on his motorized bike, and him stopping several times to photograph and record officers we felt his activities were compromising the success of our detail. Officer Welsh and I approached William advising him that we were conducting the detail and that his presence was interfering with our detail. He was told to leave the area. William eventually agreed to leave. As he rode away he rode past the undercover officers waiving (sic) at them yelling very loudly, "good by[e] officers". His waiving (sic) gesture and loud "good bye" announcement to the female undercover officers alerted any potential "johns" in the area to our detail. Officer Welsh and I again stopped William after watching him ride away south bound in the 1500 block of 9th St on his motorized bike. 9th St is a north bound only street in the 1500 block. We paced him on his motorized bike at 24 MPH which lead us to believe the engine he had on his bike is over 1 horsepower which requires a drive[r]s license to be operated. William has a revoked Illinois driver's license with a previous conviction on 11-5-12 under court case number 2011TR51068. William also had no insurance for the vehicle.

**RESPONSE: It is not disputed that Defendant Campbell completed a Probable Cause Statement. It is disputed that the contents of the statement are true. (See Exhibit 1, Deposition of Plaintiff, p. 34, lines 7-23, p. 24, lines 14-18; p. 99, lines 3-18)**

26. Officers Welsh and Campbell's supervisor, Sergeant Torrance, after reviewing the probable cause statement, approved Plaintiff's arrest based on the totality of the circumstances, including the fact that Plaintiff knew the female officers were working in an undercover capacity, Plaintiff loudly yelling "Goodbye officers" and waving in their direction when he passed them by, and due to a concern that any photographs or videos Plaintiff had taken of the undercover officers might be posted on social media, with potential harm to the officers resulting therefrom. Exh. C (Torrance Dep., 60:16-61:5; 61:17-62:10). Sergeant Torrance never encountered Plaintiff the night of his arrest, and never even went to the scene of the arrest. Exh. C (Torrance Dep., 21:16-20).

**RESPONSE: It is not disputed that Defendant Torrance approved Plaintiff's arrest. However, it is disputed that there was probable cause for the arrest.**

9

27. On the night of his arrest, Plaintiff was affiliated with an organization called Rockford Scanner whose purpose, according to Plaintiff, is "to provide the news in a timely fashion to the public," particularly crime based events. Rockford Scanner does so by posting information, photographs and video on its website and Facebook page. Exh. E (Lund Dep., 15:14-23; 90:16-21). Plaintiff has no background in journalism or any credentials or degrees in the field of journalism. Exh. E (Lund Dep., 12:15-19).

**RESPONSE: Admitted. However, Plaintiff has received press credentials while working for Rockford Scanner. (See Exhibit 1, Deposition of Plaintiff, p. 20, lines 6-24).**

28. Officers Welsh and Campbell, on the night of Plaintiff's arrest, were familiar with his affiliation with Rockford Scanner, and that Plaintiff often posted pictures of law enforcement activity on the Rockford Scanner website. Exh. A (Welsh Dep., 82:10-83:3); Exh. B (Campbell Dep., 33:8-10).

**RESPONSE: Admitted.**

29. Subsequent to Plaintiff's arrest, Officers Welsh and Campbell searched Plaintiff's person incident to the arrest and, with input from their supervisor Sergeant Torrance, decided to seize Plaintiff's cell phone and tag it into evidence because they believed it contained photographs and/or videos that Plaintiff took of the undercover officers, which would substantiate their concern that Plaintiff had photographs and/or videos which he may post on social media, which in turn could have put the undercover officers in jeopardy and danger. Exh. A (Welsh Dep., 93:7-22; 94:10-15); Exh. B (Campbell Dep., 64:12-19); Exh. C (Torrance Dep., 28:6-24); Exh. E (Lund Dep., 41:1-42:3).

> **RESPONSE: Admitted that the Defendants seized and placed into evidence Plaintiff's phone. However, it is disputed that there was any jeopardy or danger for the undercover officers. During the initial encounter with Plaintiff neither Defendant Welsh or Campbell asked about any photographs or videos (See Exhibit 2, video of encounter with Plaintiff and Defendants Welsh and Campbell).**

30. Also subsequent to Plaintiff's arrest, Officer Welsh ran Plaintiff's name through his squad car's computer system and learned that Plaintiff's driver's license was revoked as of that date. Exh. A (Welsh Dep., 96:16-19).

> **RESPONSE: It is not disputed that after the arrest is when Defendant Welsh first learned Plaintiff's driver's license was revoked.**

31. Under Illinois law, it is an offense for a person to operate a motor vehicle while that person's driver's license is revoked. 625 ILCS 5/6-303(a).

> **RESPONSE: Admitted.**

32. Under Illinois law, it is an offense for a person to operate a motor vehicle going the wrong way on a one-way street. 625 ILCS 5/11-708.

> **RESPONSE: Admitted.**

33. The Illinois Vehicle Code defines a motor vehicle as "[e]very vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails, except for vehicles moved solely by human power, motorized wheelchairs, low-speed electric bicycles, and low-speed gas bicycles." 625 ILCS 5/1-146.

> **RESPONSE: Admitted.**

34. The Illinois Vehicle Code defines low-speed gas bicycles as "[a] 2 or 3-wheeled device with fully operable pedals and a gasoline motor of less than one horsepower, whose

maximum speed on a paved level surface, when powered solely by such a motor while ridden by an operator who weighs 170 pounds, is less than 20 miles per hour." 625 ILCS 5/1-140.15.

**RESPONSE: Admitted.**

35. Subsequent to Plaintiff's arrest, the officers impounded Plaintiff's motorized bicycle because they determined it was a motor vehicle which he had been operating while his driver's license was revoked, and without insurance. Exh. A (Welsh Dep., 96:20-24).

**RESPONSE: Admitted. However, it is disputed that Plaintiff's bicycle is a motor vehicle as defined by statute as it is a low-power. (See Exhibit 1, Deposition of Plaintiff, p. 22, lines 6-9).**

36. The criminal and traffic charges against Plaintiff were eventually dismissed by the Winnebago County State's Attorney's Office, with no reason given, and without any decision or judgment on the merits. Exh. F (Order of Dismissal, Exh. 7 to Lund Dep.); Exh. E (Lund Dep., 56:16-57:16).

**RESPONSE: Admitted that all the charges against Plaintiff were dismissed. Responding further, the charges were dismissed the day Plaintiff's motion to dismiss was scheduled to be heard.**

37. Plaintiff was never told by any police officer involved in his arrest that he was only being detained for photographing or documenting police activity that was occurring on the street the evening of his arrest, contrary to the allegation in paragraph 28 of the Complaint that "Plaintiff was only detained by Defendant Officers for photographing and documenting the police activity that was occurring on a public street, not for any of the crimes of which he was falsely charged." Exh. E (Lund Dep., 102:13-18); Complaint at ¶ 28.

**RESPONSE: It is not disputed that the Defendants did not specifically tell him that was the reason they stopped him, however, Plaintiff based paragraph 28 on reports written by the Defendant Officers. (See Exhibit 1, Deposition of Plaintiff, pps 103-105.**

38. The only evidence of First Amendment retaliation against Plaintiff is his belief that such was a basis for his arrest. Exh. E (Lund Dep., 112:14-113:7).

**RESPONSE: Admitted.**

39. Certain local media outlets reported news that arrests had been made the evening of May 25, 2015, in relation to a prostitution sting conducted by the Rockford Police Department. Exhs. G and H (Media Reports, Exhs. 5 and 6 to Lund Dep.); Exh. E (Lund Dep., 128:22-130:13). The news reports accurately reported that Plaintiff was charged with obstructing an officer, aggravated driving with a revoked license, driving the wrong way on a one-way street and driving without insurance. *Id.* No media report of the arrests reported that Plaintiff was charged with any prostitution-related offense. *Id.*

**RESPONSE: It is not disputed that if you read the charges for each individual arrest, there is no mention that Plaintiff was charged with any prostitution-related charges, however, if you Google Plaintiff's name, his name appears in an article related to a prostitution sting with his photograph. (See Exhibit 1, Deposition of Plaintiff, p. 128, lines 11-15; Ex. 4, Deposition of Defendant Torrance, pps. 32-33).**

40. Plaintiff is unaware of any evidence that Officer Welsh, Officer Campbell or Officer Torrance were involved in any way in authoring, drafting or disseminating any press release regarding his arrest or any of the arrests made in relation to the prostitution sting on May 25, 2015. Exh. E (Lund Dep., 110:2-20; 113:8-21).

> **RESPONSE: Disputed. Defendant Torrance provides the names of the individuals arrested during a sting to a lieutenant to draft the press release. (See Exhibit 4, Deposition of Defendant Torrance, p. 32, lines 11-17).**

41. Plaintiff conceded under oath that his driver's license was revoked on May 25, 2015. Exh. E (Lund Dep., 24:19-25:8).

> **RESPONSE: Admitted. However, that was not known to the Defendants until after they had placed him under arrest for obstructing. (See Exhibit 3, Deposition of Defendant Welsh, p. 96, lines 1-6).**

42. Plaintiff knew the evening of May 25, 2015, prior to his interaction with police, that Rockford police were involved in an undercover prostitution detail in the Broadway area. Exh. E (Lund Dep., 27:16-28:15; 30:8-22; 31:10-22).

> **RESPONSE: Disputed as written. Plaintiff did not know that there was an undercover prostitution detail occurring when he first arrived on the scene, however, when he did realize what was occurring he moved away into an alley. (See Exhibit 1, Deposition of Plaintiff, p. 28, lines 5-10, p. 30, lines 8-22).**

43. Plaintiff conceded under oath that he rode his motorized bicycle the wrong way on a one-way street (Ninth Street) as he rode away from Officers Welsh and Campbell. Exh. E (Lund Dep., 36:16-37:13).

> **RESPONSE: Admitted.**

44. Plaintiff conceded under oath that the motor on his bicycle the evening of May 25, 2015 was 80cc in size, capable of going up to 30 miles per hour. Exh. E (Lund Dep., 98:2-9).

> **RESPONSE: Disputed. Plaintiff's bicycle was modified to be legal under the Illinois law. (See Exhibit 1, Deposition of Plaintiff, p. 98, lines 10-19).**

45. Plaintiff conceded under oath that if the police officers believed he was going to post photos of undercover officers posing as prostitutes on social media, such could compromise the police investigation. Exh. E (Lund Dep., 32:19-33:4).

**RESPONSE: Disputed. Plaintiff never posted any photographs of undercover officer and never indicated that he was going to post photographs. (See Exhibit 1, Deposition of Plaintiff, p. 32, lines 1-14).**

46. At paragraph 27 of the Complaint, Plaintiff alleged, "After Plaintiff was handcuffed, he advised Defendants Welsh and Campbell that he had a copy of the statute on his person that showed he was able to operate his low powered bicycle without insurance or a driver's license. The Defendants retrieved Plaintiff's copy of the statute, examined it, and proceeded to ticket Plaintiff anyway." Complaint, ¶ 27.

**RESPONSE: Admitted.**

47. At his deposition, Plaintiff claimed to have brought the copy of the statute referenced in paragraph 27 of his Complaint with him, which is the same copy he claims to have handed to the Defendant officers the evening of May 25, 2015. Exh. I (Copy of low-speed gas bicycle statute, Exh. 11 to Lund Dep.); Exh. E (Lund Dep., 65:12-67:17). When it was pointed out to Plaintiff at his deposition that the copy of the referenced statute – which he claimed he had handed to the Defendant officers on May 25, 2015 – actually contained a print-stamp of May 27, 2015, and so could not have been provided to the Defendant officers, Plaintiff indicated he must have been "mistaken." *Id.*

**RESPONSE: Disputed. The deposition testimony does not suggest what defense counsel suggests in this paragraph. Plaintiff was not mistaken regarding having the statute on his person during the arrest, he was mistaken if the copy shown to him in**

**the deposition was the same one he had on his person during the arrest. (See Exhibit 1, Deposition of Plaintiff, pps. 67-69).**

                                               Respectfully submitted,

                                               MEYER & KISS, LLC

                                               /s/ Daniel P. Kiss
                                               Daniel P. Kiss

Daniel P. Kiss
Louis J. Meyer
MEYER & KISS, LLC
53 West Jackson Blvd
Suite 1735
Chicago, Illinois 60604
(312)765-0100
dankiss@meyerkiss.com