# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| William Lund, | ) | |
| | ) | |
|     *Plaintiff*, | ) | |
| | ) | |
|     v. | ) | Case No: 17 C 50035 |
| | ) | |
| City of Rockford, et al., | ) | |
| | ) | |
|     *Defendants*. | ) | Judge Frederick J. Kapala |

### MEMORANDUM OPINION AND ORDER

    Plaintiff, William Lund, brings an action against defendants, Officer Sean Welsh, Officer Timothy Campbell, Sergeant Eddie Torrance, and the City of Rockford, arising out of plaintiff's arrest for obstructing an undercover prostitution detail in violation of 720 ILCS 5/31-1(a) and for driving a motor vehicle on the wrong side of the road in violation of 625 ILCS 5/11-708(b). For the reasons that follow, defendants' motion for summary judgment is granted.

### I. BACKGROUND

    The facts are taken from the pleadings, the parties' statements of undisputed facts, the parties' responses thereto, the parties' supplemental briefing as ordered by the court, and the evidence submitted in support. All the facts detailed are undisputed unless otherwise stated.

    Plaintiff is a freelance reporter and administrator for the Rockford Scanner, a business that reports on breaking and notable news. Plaintiff writes articles for the website and, for at least some of his articles, appears on-site to capture photographs.

    On May 25, 2015, the Rockford Police Department conducted a prostitution detail in the City's Midtown District, an area known for high levels of prostitution. This detail included undercover female police officers posing as prostitutes while other officers provided surveillance and security for the undercover officers. Two of those other officers were Officers Welsh and Campbell who were in a black unmarked squad car near where the undercover officers were located. At one point in the evening one of the undercover officers contacted Welsh and Campbell and "expressed concern that there was a man riding around on a motorized bicycle taking pictures of her and the other undercover officer," which "weirded out" the undercover officer and made her feel "[un]comfortable."

    Upon receiving this information Welsh and Campbell approached plaintiff observing him on his bicycle on Broadway (a street in the area of the prostitution detail) in an alley. While the parties dispute various characteristics of the bicycle, it is plaintiff's contention that it was a low-speed gas bicycle that he had modified to travel no more than 19 or 20 miles per hour.

    The officers approached plaintiff, who at that time was between half a block and one block

away from the undercover officers. Campbell told him "you are in the middle of our investigation . . . we are running a detail and you are interfering with it so if you refuse to leave, I'm going to arrest you for obstruction . . . you are in the middle of our investigation photographing everything we're doing," and then instructed him to be "out of sight . . . at least six blocks away." Plaintiff began to comply with this instruction by leaving the area on his bicycle. However, as plaintiff left, he said "Goodbye, Officers" while waving at either the undercover officers or Welsh and Campbell. While it is disputed to whom plaintiff's statement was directed, it is undisputed that plaintiff said this in a tone that was loud enough to be heard while plaintiff's bicycle motor was running.

Welsh and Campbell then decided to arrest plaintiff based on their concern that plaintiff was obstructing the prostitution detail. The officers began pursuing plaintiff. When they caught up with him, plaintiff turned the wrong way on a one-way street. The officers then "paced" plaintiff—meaning that Welsh, who was driving, measured plaintiff's speed by looking at his own speedometer. Welsh determined that plaintiff was traveling 24 miles per hour. Because of the presence of the motor on the bicycle and the speed at which Welsh clocked him, Welsh believed that plaintiff was driving a "motor vehicle" for purposes of Illinois law. Thus, because plaintiff was driving on the wrong side of the road, the officers concluded that plaintiff was operating a motor vehicle in violation of Illinois law.

The officers stopped plaintiff and arrested him. Incident to the arrest, the officers seized plaintiff's cellular phone because they believed it contained photographs and/or videos of the undercover officers. Sergeant Torrance would later approve of the arrest.

Plaintiff's action includes eight claims against defendants: (1) false arrest under § 1983; (2) unreasonable search and seizure under § 1983; (3) failure to intervene under § 1983; (4) supervisory liability under § 1983; (5) First Amendment retaliation under § 1983; (6) conspiracy under § 1983; (7) malicious prosecution under § 1983; and (8) malicious prosecution under Illinois common-law.[1] Defendants seek summary judgment on all counts.

## II. ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In evaluating such a motion, the court's role is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. Preddie v. Bartholomew Consol. Sch. Corp., 799 F.3d 806, 818-19 (7th Cir. 2015). "A genuine issue exists as to any material fact when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fidlar Techs. v. LPS Real Estate Data Sols., Inc., 810 F.3d 1075, 1079 (7th Cir. 2016). Further, the object of summary judgment procedures "is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

---

[1] The complaint also contains a ninth count against the City of Rockford titled "indemnification," which, as defendants correctly point out, is not really an independent cause of action, but rather a request for relief from the City of Rockford. Because the court finds that there is no underlying liability based on the conduct of the defendant officers, Count IX is dismissed as moot.

The court must consider the record evidence in the light most favorable to the nonmovant and draw all reasonable inferences from that evidence in favor of the nonmovant. Skiba v. Ill. Cent. R.R. Co., 884 F.3d 708, 717 (7th Cir. 2018). The moving party initially bears the burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Spierer v. Rossman, 798 F.3d 502, 508 (7th Cir. 2015) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). "If a party moving for summary judgment has properly supported his motion, the burden shifts to the nonmoving party to come forward with specific facts showing that there is a genuine issue for trial." Cincinnati Life Ins. Co. v. Beyrer, 722 F.3d 939, 951 (7th Cir. 2013) (emphasis omitted).

## A. False Arrest (Count I)

Defendants move for summary judgment on plaintiff's claim that defendants falsely arrested him. Specifically, defendants claim that they had two bases for probable cause—that plaintiff obstructed their investigation in violation of 720 ILCS 5/31-1(a), and that plaintiff drove his motor vehicle on the wrong side of the road in violation of 625 ILCS 5/11-708(b).[2] The court focuses its analysis on the latter basis.

Under § 1983, a federal remedy exists against anyone who, under color of state law, deprives a citizen of his or her rights under the Constitution. See Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health, 699 F.3d 962, 972 (7th Cir. 2012). One such right is the right not to be seized by the government without probable cause. Fox v. Hayes, 600 F.3d 819, 832 (7th Cir. 2010) ("It is well-established that an arrest without probable cause violates the Fourth Amendment."). Thus, the existence of probable cause is an absolute defense to a § 1983 claim for false arrest. Gibbs v. Lomas, 755 F.3d 529, 537 (7th Cir. 2014).

"An officer has probable cause to make an arrest only when the facts and circumstances within his knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect has committed an offense." Id. Probable cause requires only a probability or substantial chance of criminal activity rather than the certainty of it. United States v. Carroll, 750 F.3d 700, 706 (7th Cir. 2014). In making the probable cause determination, the court looks only to what facts defendants knew at the time of the arrest. Kelley v. Myler, 149 F.3d 641, 646 (7th Cir. 1998).

The record indicates that, after the officers began following plaintiff, plaintiff began driving on the wrong side of the street. Welsh then paced plaintiff and clocked him at 24 miles per hour. Based on these facts, a reasonable officer would have believed that he had probable cause to stop and arrest plaintiff for violating 625 ILCS 5/11-708(b), which states that "[u]pon a roadway so designated for one-way traffic, a vehicle shall be driven only in the direction designated." A reasonable officer also would have believed that plaintiff's bicycle constituted a "motor vehicle," rather than a "low-speed gas bicycle," which is defined as "[a] 2 or 3-wheeled device with fully

---

[2] Regarding defendants' argument that they had probable cause to arrest plaintiff because he was operating a motor vehicle with a revoked license, the court will not consider this basis for probable cause because, according to the record, Welsh and Campbell discovered that plaintiff's license had been revoked after they arrested him.

3

operable pedals and a gasoline motor of less than one horsepower, whose maximum speed on a paved level surface, when powered solely by such a motor while ridden by an operator who weighs 170 pounds, is less than 20 miles per hour." 625 ILCS 5/1-140.15; see id. §1-146 (excepting "low-speed gas bicycles" from the definition of a "motor vehicle").

Plaintiff does not dispute that he was driving on the wrong side of the road. Rather, plaintiff disputes that his gas-powered bicycle had the capacity to go beyond 19 or 20 miles per hour. While plaintiff testified that the motor was 80cc in size, capable of going up to 30 miles per hour, he further testified that he modified the motor to only be able to go up to 20 miles per hour.

This factual dispute is not material. What matters for the court's analysis is not whether the bicycle actually had the capability to travel at least 20 miles per hour, but rather whether the officers could make a reasonable determination that plaintiff's bicycle was going at least 20 miles per hour. Welsh testified that plaintiff's bicycle had a motor on it, alerting them to the possibility that the bicycle met the threshold for a "motor vehicle." Welsh further testified that he looked at his own vehicle's speedometer and observed that he and plaintiff were moving at the same speed. And, it is undisputed that plaintiff was driving the bicycle on a flat area of the street, negating the concern that he was traveling fast simply because he was going downhill. That Welsh may have been wrong about the exact speed plaintiff was traveling does not vitiate the reasonableness of his determination that there was a probable or substantial chance that plaintiff's bicycle was traveling at least 20 miles per hour. With the facts at hand, the court finds that no reasonable jury could conclude that defendants did not have a basis for believing, to a reasonable degree of certainty, that plaintiff's bicycle was traveling fast enough to violate § 11-708(b).[3]

Aside from the dispute about the bicycle's speed, plaintiff simply argues that Welsh and Campbell did not "rely on" plaintiff's violation of § 11-708(b) when making the arrest, but rather, only on his purported obstruction of their investigation. But whether Welsh and Campbell "relied on" plaintiff's breaking of the law by driving a vehicle on the wrong side of the road as the basis for

---

[3]Additionally, it is not clear that the 20 miles per hour threshold should be considered a hard-and-fast rule for determining that a particular device is or is not a "low-speed gas bicycle" exempted from the statutory definition of a "motor vehicle." In People v. Plank, the Supreme Court of Illinois heard a constitutional challenge on vagueness grounds to the statutory definition of a "low-speed gas bicycle." 2018 IL 122202, ¶ 2. Specifically, the defendant argued that the definition only applied to drivers who weighed exactly 170 pounds and therefore the statute was vague as applied to drivers that have different weights. Id. ¶ 16. However, the Court agreed with the State's interpretation—that the statute's reference to the weight of the driver served the simple purpose of "clarify[ing] how powerful a vehicle's engine must be for the vehicle to qualify as a 'motor vehicle' and that an engine's capability is the same regardless of any particular driver's weight." Id. ¶ 17. Based on the statute's phrasing, the Court interpreted the statute to "mean that a defining characteristic of a low-speed gas bicycle is an engine that is incapable of transporting 170 pounds at 20 miles per hour without help from gravity or pedaling. A bicycle's motor will either have this capability or not, regardless of the weight of any particular driver." Id. ¶ 18.

Following Plank, it stands to reason that the statute's reference to "20 miles per hour," like its reference to 170 pounds, is meant only to "clarify" the type of device that would constitute a low-speed gas bicycle under the statute. Thus, the exact speed plaintiff traveled may not be dispositive as a matter of statutory construction. (And as to his weight, we know from plaintiff's deposition testimony that on the day in question he weighed approximately 170 pounds. From this fact the court may infer that the police officers had probable cause to believe it looked like he weighed at least 170 pounds.) However, as the court has found that defendants' determination that they had probable cause to arrest plaintiff was reasonable, the court need not apply the rule in Plank to the facts at hand.

4

arresting him is also irrelevant. It is well established that "the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." Devenpeck v. Alford, 543 U.S. 146, 153 (2004). That Welsh and Campbell may have decided to arrest plaintiff for obstructing a peace officer does change the undisputed fact that a reasonably prudent person in their positions would reasonably determine that they had probable cause to arrest plaintiff for driving on the wrong side of the road in violation of § 11-708(b). And the Supreme Court has made it clear that "[a]s long as there is probable cause to stop someone for a crime—even a minor one like a traffic offense—the Fourth Amendment permits an arrest." Tapley v. Chambers, 840 F.3d 370, 378 (7th Cir. 2016) (citing Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001)); see also People v. Taylor, 388 Ill. App. 3d 169, 175 (2009).

Accordingly, "probable cause to believe that a person has committed any crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." Holmes v. Vill. of Hoffman Estate, 511 F.3d 673, 682 (7th Cir. 2007); see also Pourghoraishi v. Flying J, Inc., 449 F.3d 751, 762 (7th Cir. 2006) ("The actual existence of any probable cause to arrest precludes a § 1983 suit for false arrest."). As the court finds that Welsh and Campbell had probable cause to arrest plaintiff for violating § 11-708(b), the court need not address probable cause related to the offense of obstructing a peace officer, and the court grants summary judgment on Count I.

### B. Unreasonable Search & Seizure (Count II) &

### Malicious Prosecution (Counts VII & VIII)

In light of the court's finding that defendants had probable cause to arrest plaintiff, the court also grants summary judgment on Counts II, VII, and VIII.

First, as to plaintiff's Fourth Amendment claim in Count II, the court has determined that Welsh and Campbell had probable cause to, on the one hand, seize plaintiff after observing him driving a motor vehicle on the wrong side of the road,[4] see Lewis v. City of Chicago, 914 F.3d 472, 476 (7th Cir. 2019), and on the other hand, seize his cellular phone incident to arrest, see Riley v. California, 573 U.S. 373, 388 (2014) (noting that officers may seize cell phones incident to arrest); see also United States v. Brixen, 908 F.3d 276, 282 (7th Cir. 2018) (citing United States v. Robinson, 414 U.S. 218, 235 (1973)) (noting that evidence seized during a valid search incident to arrest need not relate to concerns for officer safety or preservation of evidence pertaining to the subject matter for probable cause).[5] Because Welsh and Campbell had probable cause, they are entitled to an absolute defense to a claim that they illegally seized plaintiff's person and cellular phone. Bailey v. United States, 568 U.S. 186, 192 (2013).

Second, as to plaintiff's malicious prosecution claim under § 1983 in Count VII, plaintiff

---

[4]To the extent plaintiff meant to include the seizure of plaintiff's person as part of his claims in Count II, such a claim would be duplicative of plaintiff's claims in Count I.

0. Plaintiff's complaint makes a reference to defendants breaking his phone after seizing it, but this fact is not supported by the record and therefore does not factor into the court's analysis.

concedes in a footnote in his complaint that it is well-established that the Seventh Circuit does not recognize malicious prosecution claims under § 1983. Serino v. Hensley, 735 F.3d 588, 593 (7th Cir. 2013). Accordingly, plaintiff's federal malicious prosecution claim must be dismissed.[6]

Finally, as to plaintiff's malicious prosecution claim under Illinois law, in order to state a claim for malicious prosecution in Illinois, a plaintiff must prove that: "(1) the defendant commenced or continued an original criminal or civil proceeding; (2) the proceeding terminated in the plaintiff's favor; (3) the defendant instituted the proceeding without probable cause; (4) the defendant acted maliciously in initiating or continuing the proceeding; and (5) the plaintiff was injured." Washington v. Summerville, 127 F.3d 552, 557 (7th Cir. 1997). In Illinois, "malicious prosecution suits are disfavored by law because of the potential deterrent effect on the reporting of crime." Logan v. Caterpillar, Inc., 246 F.3d 912, 921 (7th Cir. 2001).

Regarding the second prong, the burden is on plaintiff to prove that the nolle prosequi was entered for reasons indicative of his innocence. Swick v. Liautaud, 169 Ill. 2d 504 (1996); see also Bowlds v. Viciego, 2015 IL App (2d) 140065-U, ¶ 34 (describing the burden as "substantial"). Here, the parties identify the dismissal as a nolle prosequi.[7] To determine whether proceedings were terminated in a plaintiff's favor, courts "must look past the form or title of the disposition and examine the circumstances surrounding the entry of the nolle prosequi." Cult Awareness Network v. Church of Scientology Int'l., 177 Ill. 2d 267, 279 (1997); Treece v. Village of Naperville, 903 F. Supp. 1251, 1258 (N.D. Ill. 1995) ("When the nature of the dismissal is nolle prosequi, the court must look to underlying facts to determine whether the dismissal truly indicates innocence." (emphasis added)).

Here, the nolle prosequi is bare. It merely says "cases dismissed on motion of state's attorney." "The bare use of a nolle prosequi order does not establish that the criminal proceedings were terminated in a manner indicative of the plaintiff's innocence." Logan, 246 F.3d at 926; Summerville, 127 F.3d at 558 ("A bare nolle prosse without more is not indicative of innocence. Lack of a recorded reason for the nolle prosequi offers no insight as to the validity or invalidity of [plaintiff's] position."). "The state's mere abandonment of suit, such as through an entry of nolle prosequi, does not satisfy the favorable-termination element." Franklin v. Blackman, No.

---

[6]In support of plaintiff's § 1983 malicious prosecution claim, plaintiff cites Manuel v. City of Joliet, 137 S. Ct. 911, 922 (2017), and Mitchell v. City of Elgin, 912 F.3d 1012, 1015 (7th Cir. 2019). Plaintiff's application of the holding of these cases—"that the Fourth Amendment governs a claim for unlawful pretrial detention even beyond the start of legal process," Manuel, 137 S. Ct. at 920—is misguided, as these cases do not deal with § 1983 malicious prosecution claims. In fact, Justice Alito's dissent in Manuel explicitly notes that the majority chose not to answer a question embedded in the question set out in the petition for a writ of certiorari, that being,"[w]hether an individual's Fourth Amendment right to be free from unreasonable seizure continues beyond legal process so as to allow a malicious prosecution claim based upon the Fourth Amendment." Id. at 924 (Alito, J., dissenting) ("What is perhaps most remarkable about the Court's approach is that it entirely ignores the question that we agreed to decide, i.e., whether a claim of malicious prosecution may be brought under the Fourth Amendment.").

[7]A nolle prosequi is a formal entry of record whereby the prosecuting attorney declares that he is unwilling to prosecute a case. Ferguson v. City of Chicago, 213 Ill. 2d 94, 101 (2004). Typically, a nolle prosequi leaves matters as if charges had never been filed; if the state wants to bring charges again, it must file a new charging document. People v. Daniels, 187 Ill. 2d 301 (1999).

13-CV-470, 2014 WL 6685950, at *6 (N.D. Ill. Nov. 25, 2014). Thus, with a bare nolle prosequi order, it is plaintiff's burden to show "circumstances under which the disposition was obtained." The only circumstance plaintiff references is in two lines in his opposition to the motion for summary judgment, stating "Plaintiff's case was not nolle'd as part of any plea.[8] In fact, it was dismissed the same afternoon it was set for hearing on a motion to dismiss filed by his defense counsel." This is simply not enough to create a genuine dispute of fact; plaintiff points to no authority to suggest that the timing of the nolle prosequi order is "indicative" of innocence.[9] See Rattray v. Caudill, No. 14 CV 8735, 2016 WL 5848913, at *3 (N.D. Ill. Oct. 6, 2016) ("All of the charges against Rattray were terminated, and the certified statement of disposition states "nolle prosequi" but does not provide a reason for why it was entered; Rattray admits that the record is silent on the reason for its entry. This is not sufficient evidence to survive summary judgment." (citation omitted)); Bowlds, 2015 IL App (2d) 140065-U, ¶ 35 ("Given plaintiff's substantial burden, the evidence raised not a genuine issue of fact, but only a basis for speculation. The nolle prosequi order was a "bare bones" statement. No other evidence in the record provides insight into the State's reason for seeking the dismissal. . . . The State might have concluded that there was no basis to prosecute plaintiff, but it is equally plausible that the State decided to forgo further criminal proceedings for reasons that our courts hold do not indicate innocence.").

Alternatively, regarding the fourth prong, there is the additional problem for plaintiff that to prove a malicious prosecution claim against police officers plaintiff must show "more than a lack of probable cause; rather, he must allege that the officers committed some improper act after they arrested him without probable cause, for example, that they pressured or influenced the prosecutors to indict, made knowing misstatements to the prosecutor, testified untruthfully, or covered up exculpatory evidence." McDade v. Stacker, 106 F. App'x. 471, 475 (7th Cir. 2004); see also Steeves v. McGrath, No. 99 C 4567, 2000 WL 198895, at *4 (N.D. Ill. Feb. 11, 2000) ("[C]laimants must allege some police wrongdoing after the arrest that influences the prosecutor's decision to bring the case to trial. Examples of post-arrest wrongdoing include giving false testimony or withholding exculpatory evidence." (citation omitted)). The record is completely silent as to any improper acts taken by the officers. This alone is also grounds for dismissal. Defendants' motion for summary judgment as to Count VIII is also granted.

### C. First Amendment Retaliation (Count V)

Plaintiff also brings a claim under § 1983 for First Amendment retaliation. Specifically,

---

[8] It is true that "[t]he state's decision to dismiss a criminal case is not indicative of innocence when the nolle prosequi is the result of an agreement or compromise with the accused." Swick, 169 Ill. 2d at 513. But plaintiff cites to no authority for the opposite proposition—that a nolle prosequi that is not based on a plea implies that the dismissal is "indicative" of innocence. In fact, other than Swick—which found that the plaintiff in that case failed to prove the second prong—plaintiff cites to no other case on this issue.

[9] The court's review of the records of the Circuit Court for the 17th Judicial Circuit in the State of Illinois, of which the court takes judicial notice, reveals that the plaintiff was also charged with driving after revocation in violation of 625 ILCS 5/6-303(a). But the record in this case does not show how this charge was resolved. Because plaintiff has the burden of proving favorable termination, plaintiff's failure to analyze this charge precludes him from making it the basis of his state-law malicious prosecution claim in Count VIII.

7

plaintiff claims that defendants retaliated against him for exercising his right to freedom of the press by arresting him. To demonstrate a prima facie case of First Amendment retaliation, plaintiff must prove that (1) he engaged in activity protected by the First Amendment, (2) he suffered an adverse action that would likely deter future First Amendment activity, and (3) the First Amendment activity was "at least a motivating factor" in defendants' decision to retaliate. Gekas v. Vasiliades, 814 F.3d 890, 895 (7th Cir. 2016).

Plaintiff's First Amendment retaliation claim is foreclosed because defendants are shielded by qualified immunity. "[Q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." Kingsley v. Hendrickson, 801 F.3d 828, 831 (7th Cir. 2015). An officer does not violate a clearly established right unless the contours of the right were sufficiently definite to allow a reasonable officer to understand he was violating it; thus, the applicable law must have placed the legal question beyond debate. See City and County of San Francisco v. Sheehan, 135 S. Ct. 1765, 1774 (2015). Further, the right must be established in a particularized sense "so that the 'contours' of the right are clear to a reasonable official." Reichle v. Howards, 566 U.S. 658, 665 (2012). This requirement "protects the balance between vindication of constitutional rights and government officials' effective performance of their duties by ensuring that officials can reasonably anticipate when their conduct may give rise to liability for damages." Id. at 664 (quoting Anderson v. Creighton, 483 U.S. 635, 639 (1987)).

In Reichle, the Supreme Court held that an officer was entitled to qualified immunity with respect to a claim that he made an arrest in retaliation for the arrestee's exercise of free speech rights because it was not clearly established "that an arrest supported by probable cause could give rise to a First Amendment violation." Id. at 670. The Seventh Circuit agreed with and applied this principle in Thayer v. Chiczewski, 705 F.3d 237 (7th Cir. 2012), observing that although the Supreme Court had said that probable cause is a bar to retaliatory prosecution claims, see Hartman v. Moore, 547 U.S. 250, 260 (2006), "[t]he case law is unsettled on whether probable cause is a complete bar to First Amendment retaliatory arrest claims," 705 F.3d at 253. Quoting Reichle, the Seventh Circuit noted that "neither our circuit nor the Supreme Court has recognized a First Amendment right to be free from a retaliatory arrest that is supported by probable cause." Id.

Generally, "existing precedent must have placed the statutory or constitutional question beyond debate." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Ashcroft v. al–Kidd, 563 U.S. 731, 741 (2011)). That is simply not the case here. Accord Marshall v. City of Farmington Hills, 693 F. App'x 417, 426 (6th Cir. 2017); Pegg v. Herrnberger, 845 F.3d 112, 119 (4th Cir. 2017); Zaloga v. Borough of Moosic, 841 F.3d 170, 177 (3d Cir. 2016); Galarza v. Monti, 327 F. Supp. 3d 594, 605 (S.D.N.Y. 2018). The court finds that Reichle and Thayer are dispositive on this issue, cloaking defendants in qualified immunity. Accordingly, the court grants defendants' motion for summary judgment as to Count V.

### D. Failure to Intervene (Count III), Supervisory Liability (Count IV), and Conspiracy (Count VI)

Having found no underlying constitutional deprivation, plaintiff's three remaining claims must also fail. In Count III, plaintiff brings a claim under § 1983 for failure to intervene against

8

Officers Welsh and Campbell for their alleged failure to protect plaintiff from false arrest or unlawful seizure. In the Seventh Circuit,

> [a]n officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: (1) that excessive force was being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official; <u>and</u> the officer had a realistic opportunity to intervene to prevent the harm from occurring.

<u>Chavez v. Ill. State Police</u>, 251 F.3d 612, 652 (7th Cir. 2001).

The court has already determined that plaintiff was not unjustifiably arrested and that defendants have qualified immunity on plaintiff's claim for First Amendment retaliation. Accordingly, there being no basis by which plaintiff can sustain his failure to intervene claim, summary judgment is warranted on Count III.

In Count IV, plaintiff brings a claim against Sergeant Torrance for supervisory liability. While public officials must typically be "personally responsible" for depriving an individual of his constitutional rights, "a supervisor may still be personally liable for the acts of his subordinates if he approves of the conduct and the basis for it." <u>Backes v. Village of Peoria Heights</u>, 662 F.3d 866, 870 (7th Cir. 2011). However, a claim for supervisory liability under § 1983 "requires an underlying constitutional violation by an officer who was subject to the [supervisor's] supervision." <u>Ross v. Daley</u>, No. 05 C 3665, 2006 WL 2460614, at *2 (N.D. Ill. Aug. 23, 2006) (citing <u>Higgins v. Corr. Med. Servs. of Ill., Inc.</u>, 178 F.3d 508, 513-14 (7th Cir. 1999)). Like in Count III, because there is no constitutional deprivation to be had, there is no basis for supervisory liability against Sergeant Torrance, and the court grants summary judgment as to Count IV.

Finally, in Count VI, plaintiff brings a claim for civil conspiracy under § 1983 against defendants for agreeing to falsely arrest plaintiff and/or commit First Amendment retaliation against plaintiff. However, "the absence of an underlying constitutional violation dooms the conspiracy claim." <u>Akbar v. Calumet City</u>, 632 F. App'x 868, 872-73 (7th Cir. 2015). Thus, summary judgment is appropriate as to Count VI as well.

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted.

Date: 4/23/2019

ENTER:

_____

FREDERICK J. KAPALA

District Judge